**DAVID A. RIGGI, ESQ.**
Nevada Bar No. 4727
7900 W. Sahara Ave., Suite 100
Las Vegas, NV 89117
Phone: (702) 463-7777
Fax: (888) 306-7157
E-mail: riggilaw@gmail.com

**LEO P. FLANGAS, ESQ.**
Nevada Bar No. 5637
**THOMAS M. FRONCZEK, ESQ.**
Nevada Bar No. 11380
**FLANGAS LAW FIRM, LTD.**
616 S. 8th Street
Las Vegas, Nevada 89101
Telephone: (702) 384-1990
E-mail: leo@flangaslawfirm.com
*Attorneys for Plaintiff Joan Lee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

MARICELJEAN JADUZ RYCRAFT,

        Debtor.

Case No.: 25-12819-ABL

_____

JOAN LEE,

        Plaintiff,

v.

MARICELJEAN JADUZ RYCRAFT,

        Defendant.

_____

Adv. Proc. No.: 25-01191-ABL

Hearing Date: June 23, 2026
Hearing Time: 1:30 p.m.

**PLAINTIFF JOAN LEE'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND/OR MOTION FOR SUMMARY JUDGMENT**

Plaintiff Joan Lee ("Lee" or "Plaintiff") submits this Opposition ("Opposition") to Defendant Mariceljean Jaduz Rycraft's ("Rycraft" or "Defendant") Motion to Dismiss the Second Amended Complaint and/or Motion for Summary Judgment (the "Motion"). Attached to this opposition as

1

**Exhibit "A"** is the Plaintiff's response to the Defendant's statement of undisputed facts found contemporaneously is the Declaration of Joan Lee in support of this opposition.

## I. INTRODUCTION

The Motion improperly conflates two distinct standards: (a) dismissal under Rule 12(b)(6), at which all well-pleaded allegations are taken as true and all reasonable inferences are drawn in Plaintiff's favor; and (b) summary judgment under Rule 56, which requires the absence of any genuine dispute of material fact, viewed in the light most favorable to the nonmovant.

The Second Amended Complaint ("SAC") cures the deficiencies identified in this Court's March 13, 2026 Order and pleads—claim by claim and with the "who, what, when, where, and how" required by Rule 9(b)—Plaintiff's claims under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6), 727(a)(2), and 727(a)(4)(A).

Defendant's request for summary judgment is premature. No discovery has occurred, and the records and witnesses material to Plaintiff's claims—including Adora's bank records, third-party communications, and Defendant's own testimony—are in Defendant's or third parties' control. The Motion relies almost entirely on Defendant's own declaration, which itself raises credibility, authenticity, and state-of-mind disputes that cannot be resolved on a paper record. The Motion to Dismiss should be denied; the Motion for Summary Judgment should be denied or, in the alternative, deferred or denied pending reasonable discovery under Federal Rule of Civil Procedure 56(d).

## II. STATEMENT OF FACTS

The following chronology summarizes the material facts as alleged in the SAC and supported by the concurrently filed Declaration of Joan Lee:

**Late 2023.** Defendant approached Plaintiff with a proposal that Plaintiff fund the acquisition of Adora Vida Care, LLC ("Adora"), a hospice care entity owned by Nicole Bustamante ("Bustamante"), for $300,000, and that Defendant operate Adora. Defendant represented, among other things, (i) that listing Plaintiff on Adora's licensing and public records would create a "conflict of interest" with Plaintiff's nursing facility business; (ii) that Defendant possessed the business acumen and operational ability to manage Adora; and (iii) that Defendant could generate 100% of Adora's patients. (SAC ¶¶ 6–7, 14–16.)

**December 22, 2023.** Plaintiff, Defendant, and Bustamante met in Clark County, Nevada. At that meeting, Defendant presented and asked Plaintiff to sign the transactional documents, including a "Partnership Agreement" (SAC Ex. 3) Defendant had prepared, and a one-page "Benefactor Acknowledgment" (SAC Ex. 2). The Benefactor Acknowledgment identified Defendant as the "Purchaser" and Plaintiff as the "benefactor" funding the entire $300,000 purchase. The Partnership Agreement provided that Plaintiff would contribute 100% of the financial capital and Defendant would contribute "100% Operations and Marketing, $0," with no withdrawals from the partnership accounts without both partners' written consent. (SAC ¶¶ 8–12; Lee Decl. ¶¶ 9–11.)

**December 2023.** Plaintiff paid $50,000 toward the purchase price. (SAC ¶ 7.)

**During 2024.** Plaintiff paid an additional $50,000 toward the purchase price in installments by check that extended beyond the end of January 2024. (SAC ¶ 7; Lee Decl. ¶ 15.)

**January – May 2024.** At Defendant's repeated requests, Plaintiff advanced approximately $68,000 of additional personal funds for Adora's operating and payroll expenses, based on Defendant's continuing assurances that she was generating patient referrals and revenue. (SAC ¶ 19.) Plaintiff's out-of-pocket contributions total approximately $168,000. (SAC ¶¶ 27, 31.)

**Early 2024.** Defendant excluded Plaintiff from Adora's physical premises and revoked Plaintiff's access to Adora's operating and payroll bank accounts. To Plaintiff's understanding, those accounts had been funded with the monies Plaintiff advanced. From that point forward, Plaintiff was unable to monitor or control those accounts. (SAC ¶¶ 22, 24.)

**Payment-schedule renegotiation.** During this period, Plaintiff reached an agreement with Bustamante to revise the payment schedule for the remaining balance of the Adora purchase price. Because Plaintiff continued to advance her own funds to Adora's operating and payroll expenses at Defendant's repeated requests—funds that, on Defendant's representations, should not have been needed because Defendant was to generate revenue—Plaintiff had less money available to make further payments to Bustamante on the remaining balance. (Lee Decl. ¶¶ 18–19.)

**Threats and coercion.** When Plaintiff questioned the operation and sought an accounting, Defendant threatened to report Plaintiff to the Labor Board and to contact Plaintiff's adult sons and other family members who had no involvement in the transaction. (SAC ¶ 23.)

**Adora's current status.** Adora is in default with the Nevada Secretary of State (SAC ¶ 39 & Ex. 4), and Plaintiff has not recovered any portion of her $168,000 contribution. (SAC ¶ 40.) Defendant filed her Chapter 7 petition on May 15, 2025, and now seeks to discharge any debt arising from the conduct alleged. (SAC ¶ 41.)

**Procedural posture.** Plaintiff filed her original Complaint on August 18, 2025; this Court granted in part and denied in part Defendant's Rule 12 motion on March 13, 2026 (Adv. Dkt. #20), with leave to amend; Plaintiff filed the SAC on March 27, 2026 (Adv. Dkt. #27); and Defendant filed the present Motion on May 8, 2026.

## III. CORE DISPUTED ISSUES

The following issues are genuinely disputed and, individually and collectively, are dispositive of the Motion: (i) who induced whom into the Adora transaction and what was promised; (ii) what representations Defendant made to Plaintiff and whether Plaintiff relied on them; (iii) who controlled Adora's operating and payroll accounts and when Plaintiff's access was removed; (iv) how Adora's funds were used and whether Adora property was converted or misappropriated; (v) the authenticity of signatures on the documents attached to the SAC; and (vi) Defendant's intent and state of mind in entering the transaction, in soliciting additional funds, and in filing the disclosures in her Chapter 7 case.

## IV. LEGAL STANDARDS

### A. Rule 12(b)(6).

A complaint survives a Rule 12(b)(6) motion if it pleads enough factual content to state a claim to relief that is plausible on its face. The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor.

### B. Rule 9(b).

Rule 9(b) requires that fraud be pleaded with particularity, but "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The rule is satisfied when the complaint provides "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (Rule 9(b) requires particular details of a fraudulent scheme; Plaintiff identifies them here).

*C. Rule 56.*

Summary judgment is appropriate only where, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 255 (1986). The movant bears the initial burden of identifying portions of the record demonstrating the absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the nonmovant must point to specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences are jury functions, not those of a judge ruling on summary judgment. *Anderson*, 477 U.S. at 255.

*D. Rule 56(d).*

Where the nonmovant shows by declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may defer ruling, allow time for discovery, or deny the motion. Fed. R. Civ. P. 56(d). The Ninth Circuit "generally disfavors" summary judgment before discovery and applies Rule 56(d) liberally. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001); *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 773–74 (9th Cir. 2003); *Garrett v. City & Cnty. of S.F.*, 818 F.2d 1515, 1518 (9th Cir. 1987) (pre-discovery summary judgment is disfavored).

**V. ARGUMENT — MOTION TO DISMISS**

*A. Rule 9(b) Umbrella: The SAC Pleads the Who, What, When, Where, and How.*

The SAC identifies Defendant as the speaker (*who*); the specific representations regarding licensing, operational ability, and patient generation (*what*, SAC ¶¶ 14–16); the time frame, including

6

the December 22, 2023 meeting and Defendant's continuing solicitations of additional funds through May 2024 (*when*, SAC ¶¶ 8–10, 14, 19, 21); the location in Clark County, Nevada and the documents Defendant drafted and presented (*where*, SAC ¶¶ 6, 8, 9); and the means—Defendant's oral representations, the Partnership Agreement Defendant drafted, and the Benefactor Acknowledgment Defendant presented for signature at the meeting—by which Defendant induced Plaintiff to fund the entire purchase while Defendant contributed nothing (*how*, SAC ¶¶ 8–14, 18). That articulation satisfies the Ninth Circuit's strict Rule 9(b) standard. *Vess*, 317 F.3d at 1106; *Kearns*, 567 F.3d at 1124.

Defendant's objection that the SAC lacks "the exact dates, method of payment, and who exactly was paid" (Mot. at 7) demands evidentiary detail not required at the pleading stage. The SAC identifies the categories and approximate timing of the payments; the precise transactional detail, to the extent it exists, is largely in Defendant's and Bustamante's control and will be developed in discovery. Intent and knowledge "may be alleged generally" and may be proven circumstantially.

### B. § 523(a)(2)(A) — False Pretenses, False Representation, or Actual Fraud.

The Ninth Circuit's controlling formulation requires the creditor to establish: (1) a misrepresentation, fraudulent omission, or deceptive conduct; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) intent to deceive; (4) justifiable reliance; and (5) damage proximately caused by the reliance. *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000). Reliance need only be justifiable, not reasonable. *Field v. Mans*, 516 U.S. 59, 70–75 (1995).

The SAC alleges each element: specific misrepresentations and deceptive conduct (licensing/conflict-of-interest pretext, business acumen, patient generation); Defendant's knowledge of falsity; intent to induce reliance; Plaintiff's justifiable reliance; and damages of approximately

$168,000. (SAC ¶¶ 14–18, 26–31.) That is more than a contract dispute at the pleading stage: the SAC alleges that Defendant never intended to perform when she induced Plaintiff to sign the Benefactor Acknowledgment and Partnership Agreement, and that Defendant's subsequent conduct—immediate exclusion of Plaintiff, demands for additional funds rather than the promised revenue, and use of Adora's funds inconsistent with the agreed purpose—is consistent with that allegation. (SAC ¶¶ 20–24.) Fraudulent intent may be inferred from the surrounding circumstances and from the totality of the debtor's conduct. *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087–88 (9th Cir. 1996).

Where, as here, the misconduct is alleged to include non-disclosure and information asymmetry between the proponent who drafted the Partnership Agreement and presented the transactional documents (Defendant) and the party induced into the transaction, the duty-to-disclose and reliance themes recognized in *Apte v. Romesh Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323–24 (9th Cir. 1996), apply with full force. Nondischargeability under § 523(a)(2)(A) extends to all liability arising from the fraud, including incidental damages and (where applicable) fees and statutory awards. *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998). Accordingly, dismissal of the § 523(a)(2)(A) claim should be denied.

### *C. § 523(a)(4) — Embezzlement, Larceny, and (Alternatively) Defalcation While Acting in a Fiduciary Capacity.*

The SAC alleges that Plaintiff entrusted approximately $168,000 to Defendant for use in the Adora venture under documents Defendant presented and (as to the Partnership Agreement) drafted, and that Defendant appropriated and used those funds in a manner inconsistent with the agreed-upon purpose. (SAC ¶¶ 8–19, 22, 24, 36–38.) That states a claim under § 523(a)(4) on an embezzlement and larceny theory regardless of whether an express or technical trust is ultimately established.

Embezzlement requires the fraudulent appropriation of property by a person to whom it has been entrusted. *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991).

Plaintiff acknowledges that "fiduciary capacity" under § 523(a)(4) is construed narrowly and generally requires an express or technical trust that existed before the alleged wrongdoing. *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003); see also *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (technical/express trust requirement). On that point, the SAC alleges in the alternative that the Benefactor Acknowledgment and Partnership Agreement, read together, constitute an express written trust—an inquiry that turns on the documents and Nevada trust law, and is fact-intensive enough that it cannot be resolved on the pleadings. (SAC ¶ 34.) To the extent the claim is pressed on a defalcation theory, the SAC alleges the culpable state of mind required—knowledge of, or gross recklessness as to, the impropriety of the conduct. (SAC ¶¶ 36–38); *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273–74 (2013). Accordingly, dismissal of the § 523(a)(4) claim should be denied.

### D. § 523(a)(6) — Willful and Malicious Injury.

Section 523(a)(6) excepts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court has held that nondischargeability requires a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that produces injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998). The Ninth Circuit construes the willfulness prong subjectively: the debtor must have either a subjective intent to harm or a subjective belief that harm is substantially certain to result from her conduct. *In re Su*, 290 F.3d 1140, 1142, 1145–46 (9th Cir. 2002). An injury is "malicious" when it involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse," and an intentional breach accompanied by tortious conduct can satisfy the standard. *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001).

The SAC alleges that Defendant intentionally (i) excluded Plaintiff from Adora's premises; (ii) cut off Plaintiff's access to the operating and payroll accounts in which Plaintiff's funds resided; (iii) used Adora's funds for purposes other than those agreed; (iv) refused to provide an accounting; and (v) used threats directed at Plaintiff's family and the Labor Board to coerce Plaintiff's silence. (SAC ¶¶ 23, 24, 32.) Those allegations plausibly state willful and malicious injury under *Geiger*, *Su*, and *Jercich*. Defendant's subjective intent is a quintessential question of fact. *Su*, 290 F.3d at 1146. Accordingly, dismissal of the § 523(a)(6) claim should be denied.

### E. §§ 727(a)(2) and (a)(4)(A) — Concealment and False Oath.

Section 727(a)(2)(A) denies discharge where the debtor, with intent to hinder, delay, or defraud creditors, has transferred, removed, destroyed, or concealed property within one year before the petition. The Ninth Circuit requires proof of (1) a disposition of property, such as a transfer or concealment, and (2) a subjective intent to hinder, delay, or defraud a creditor. *In re Retz*, 606 F.3d 1189, 1196–97 (9th Cir. 2010). Section 727(a)(4)(A) denies discharge where the debtor "knowingly and fraudulently, in or in connection with the case…made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The Ninth Circuit requires (1) a false statement under oath; (2) made knowingly and fraudulently; and (3) material to the bankruptcy case. *Retz*, 606 F.3d at 1197.

Fraudulent intent under § 727 may be established by circumstantial evidence and by inferences drawn from a pattern of conduct or from reckless indifference to the truth. *Developers Sur. & Indem. Co. v. Khalil (In re Khalil)*, 578 F.3d 1167, 1170 (9th Cir. 2009). Actual injury to a creditor is not a prerequisite to denying discharge under § 727(a)(2). *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986).

The SAC alleges, on information and belief, that Defendant's Schedules and Statement of Financial Affairs omit or misstate (i) Defendant's beneficial interest in Adora; (ii) transfers, payments,

10

or benefits received from Plaintiff in excess of $168,000; (iii) other property or business dealings; and (iv) Defendant's former and/or current residences—and that these omissions and misstatements were made with intent to hinder, delay, or defraud creditors and the Trustee. (SAC ¶¶ 37–40.) Materiality, completeness, and intent in connection with bankruptcy disclosures are fact-bound issues that cannot be decided on a motion to dismiss and are particularly ill-suited to pre-discovery summary judgment. *Retz*, 606 F.3d at 1197–98. Plaintiff has independent standing as a creditor. Fed. R. Bankr. P. 4004(a); 11 U.S.C. § 727(c)(1). Accordingly, dismissal of the §§ 727(a)(2) and (a)(4)(A) claims should be denied.

**VI. ARGUMENT — SUMMARY JUDGMENT**

***A. The Motion for Summary Judgment Is Premature and Should Be Denied or Deferred Under Rule 56(d).***

No discovery has occurred in this adversary proceeding. No depositions have been taken, no documents have been subpoenaed, and no responses to written discovery have been served. The Declaration of Joan Lee filed concurrently herewith, and the Declaration of Counsel, identify with specificity the facts essential to Plaintiff's opposition that are presently unavailable.

The following targeted discovery is necessary to oppose summary judgment. Each category maps directly to a material element of one or more of Plaintiff's claims: bank records and Bustamante records go to entrustment, misappropriation, and the accuracy of Defendant's Schedules; the deposition of Defendant goes to representations, intent, reliance, and the state-of-mind element of every claim; communications and access records go to willful and malicious injury and to the timing of Plaintiff's lockout; and authenticity-related discovery goes to the disputed signature on Exhibit 1.

(i) Subpoenas to the financial institutions holding Adora's accounts for all account-opening documents, signature cards, lists of authorized users, monthly statements, and transaction-level detail covering the period December 2023 through Defendant's petition date.

(ii) The deposition of Defendant regarding the representations she made to Plaintiff, the structure and drafting of the Benefactor Acknowledgment and Partnership Agreement, the control and operation of Adora's accounts, the timing and circumstances of Plaintiff's removal from access, and the disposition of Adora's funds.

(iii) Subpoenas to and the deposition of Nicole Bustamante regarding payments received in connection with the Adora purchase, the drafting and execution of the relevant documents, and her communications with Defendant and Plaintiff.

(iv) The production of communications—including text messages and emails—between Defendant and Plaintiff and between Defendant and third parties regarding (a) requests for additional funds, (b) control of Adora's operations and accounts, (c) Plaintiff's removal from access, and (d) the threats alleged in the SAC.

(v) Records sufficient to support or refute Defendant's assertion that Plaintiff used Adora funds for gambling, including casino host records, financial records reflecting transfers from Adora accounts, and Defendant's own personal records.

(vi) If document authenticity is contested at trial, a forensic examination of the signatures appearing on the exhibits attached to the SAC.

Pre-discovery summary judgment is disfavored and is reserved for the rare case in which no factual development could create a triable issue. *Metabolife*, 264 F.3d at 846; *Burlington N. Santa Fe*,

323 F.3d at 773–74; *Garrett*, 818 F.2d at 1518. This is not that case. The Court should deny the Motion or defer ruling under Rule 56(d).

### B. Even on the Present Record, Genuine Disputes of Material Fact Preclude Summary Judgment.

Plaintiff's concurrently filed Declaration places the following material facts squarely in dispute:

• **Who induced whom.** Plaintiff's Declaration states that Defendant approached Plaintiff with the Adora proposal. Defendant's declaration says the opposite. The conflict is one of credibility.

• **What was represented.** Plaintiff's Declaration sets out the specific representations Defendant made regarding licensing, operational ability, and patient generation. Defendant denies them. That conflict cannot be resolved on a paper record.

• **Who drafted the documents.** Plaintiff's Declaration states that Defendant drafted the Partnership Agreement and presented the transactional documents for signature at the December 22, 2023 meeting; Defendant's own declaration concedes she drafted the Partnership Agreement using "rocket lawyer online." (Rycraft Decl. ¶ 21.)

• **Authenticity of signatures.** Defendant disclaims her signature on Exhibit 1 (Purchase Agreement) while conceding it "looks like" her signature. (Rycraft Decl. ¶ 20.) Authenticity is a quintessential trier-of-fact question.

• **Who controlled the accounts and when access changed.** Plaintiff's Declaration identifies the period in early 2024 when Defendant cut off Plaintiff's access to Adora's operating and payroll accounts. Defendant disputes the timing and the consequences.

• **Use of funds.** The disposition of Adora's funds, including Defendant's assertion that Plaintiff used Adora funds for gambling, presents a factual dispute that cannot be resolved without bank records and discovery.

• **Intent.** Every claim in the SAC turns on Defendant's subjective intent—to deceive, to defraud, to harm, or to conceal. The trier of fact, not the Court at summary judgment, weighs credibility and resolves state-of-mind disputes. *Anderson*, 477 U.S. at 255.

Defendant's argument that Plaintiff "breached" by failing to pay the remaining $200,000 of the purchase price assumes facts the SAC and Plaintiff's Declaration contest. The record presents disputed issues regarding whether the Benefactor Acknowledgment was procured by fraud, whether Defendant's prior conduct excused Plaintiff's further performance, and whether any "balance" was ever properly due. Those issues are not appropriate for resolution on summary judgment.

**VII. RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Plaintiff's paragraph-by-paragraph response to Defendant's Statement of Undisputed Facts is attached as **Exhibit "A"** and incorporated by reference.

**VIII. THE DERIVATIVE-SUIT ARGUMENT**

Defendant's contention that Plaintiff was required to bring a derivative action because Adora is an LLC is misplaced. This adversary is a creditor's nondischargeability and denial-of-discharge action under 11 U.S.C. §§ 523 and 727, based on direct injury to Plaintiff—the loss of her own $168,000 obtained from her through the conduct alleged. The direct-versus-derivative distinction turns on who suffered the alleged harm and who would receive any recovery. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). Plaintiff alleges injury to herself, and the recovery sought is for her, not for Adora. Where a member alleges only injury to the entity, that claim is

14

derivative, see *PacLink Communications Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964 (2001); here, the claims pleaded are direct and personal to Plaintiff.

**IX. RELIEF REQUESTED**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order: (1) denying the Motion to Dismiss; (2) denying the Motion for Summary Judgment; (3) alternatively, denying or deferring the Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d) until reasonable discovery has been completed; and (4) granting such other and further relief as the Court deems just and proper.

DATED: May 29, 2026.

**DAVID A. RIGGI, ESQ.**
By: */s/ David A. Riggi*
David A. Riggi, Esq.
Nevada Bar No. 4727
7900 W. Sahara Ave., Suite 100
Las Vegas, NV 89117
*Attorney for Plaintiff Joan Lee*