**DAVID A. RIGGI, ESQ.**
Nevada Bar No. 4727
7900 W. Sahara Ave., Suite 100
Las Vegas, NV 89117
Phone: (702) 463-7777
E-mail: riggilaw@gmail.com

**LEO P. FLANGAS, ESQ.**
Nevada Bar No. 5637
**THOMAS M. FRONCZEK, ESQ.**
Nevada Bar No. 11380
**FLANGAS LAW FIRM, LTD.**
616 S. 8th Street
Las Vegas, Nevada 89101
Telephone: (702) 384-1990
E-mail: leo@flangaslawfirm.com
*Attorneys for Plaintiff Joan Lee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

MARICELJEAN JADUZ RYCRAFT,                                        Case No.: 25-12819-ABL

        Debtor.

_____

JOAN LEE,                                                                                      Adv. Proc. No.: 25-01191-ABL

        Plaintiff,

v.

MARICELJEAN JADUZ RYCRAFT,                               Hearing Date: June 23, 2026
                                                                                          Hearing Time: 1:30 p.m.

        Defendant.

_____

### DECLARATION OF JOAN LEE IN SUPPORT OF
### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR
### MOTION FOR SUMMARY JUDGMENT

I, Joan Lee, declare as follows:

1.      I am the Plaintiff in the above-captioned adversary proceeding. I am over the age of eighteen, am competent to testify, and have personal knowledge of the facts stated in this Declaration. If called as a witness, I could and would testify competently to these facts.

1

**2.**     I reside in Clark County, Nevada. I am over the age of sixty.

**3.**     I own and operate Royal Springs Healthcare and Rehab Inc., a skilled nursing facility located in Clark County, Nevada.

**4.**     I had known Defendant Mariceljean Jaduz Rycraft ("Rycraft") before 2023. In late 2023, Rycraft contacted me and proposed that I fund the purchase of a hospice care business, Adora Vida Care, LLC ("Adora"), which she said was for sale by Nicole Bustamante ("Bustamante") for $300,000.

**5.**     Rycraft told me that she would operate Adora. She told me she had experience, contacts, and the ability to make Adora profitable. She told me she could produce 100% of Adora's patient referrals.

**6.**     Rycraft also told me that putting my name on Adora's licensing and public records would create a "conflict of interest" because I own Royal Springs Healthcare and Rehab Inc. I believed Rycraft when she said this, and I relied on it. I did not agree to refer any patients from Royal Springs to Adora.

**7.**     Rycraft approached me about Adora. I did not approach her. To the extent paragraph 8 of Rycraft's May 8, 2026 Declaration states the opposite, that is not what happened.

**8.**     On December 22, 2023, Rycraft, Bustamante, and I met in person in Clark County, Nevada. The meeting was in connection with the proposed purchase of Adora.

**9.**     At that meeting, Rycraft presented me with the "Partnership Agreement," attached as Exhibit 3 to the Second Amended Complaint, which she said she had prepared. Rycraft asked me

to sign all of the documents that were presented to me at the meeting in connection with the Adora transaction.

10.    The Benefactor Acknowledgment (attached as Exhibit 2 to the Second Amended Complaint) provided that I would pay the entire $300,000 purchase price for Adora as "benefactor" and that Rycraft would be the "Purchaser." I signed the Benefactor Acknowledgment at the meeting. Rycraft also signed it. The signature on Exhibit 2 is Rycraft's.

11.    The Partnership Agreement provided that I would contribute 100% of the financial capital and that Rycraft would contribute "100% Operations and Marketing, $0." It also provided that no money could be withdrawn from the partnership accounts without the written consent of both partners. I signed the Partnership Agreement at the meeting.

12.    My understanding of the arrangement, based on what Rycraft told me and on the documents presented at the meeting, was that I was funding the purchase and that Rycraft would run the business, bring in patients, and account to me for what happened with my money.

13.    Rycraft has stated in her Declaration at paragraph 21 that she drafted the Partnership Agreement using "rocket lawyer online." That is consistent with what I observed at the December 22, 2023 meeting: Rycraft prepared the Partnership Agreement and asked me to sign the documents presented at the meeting in connection with the Adora transaction.

14.    In reliance on what Rycraft told me, I paid $50,000 in December 2023 toward the Adora purchase. To the best of my recollection, that payment was made by check, in connection with the Adora purchase price, after Rycraft told me the funds were needed to complete the acquisition from Bustamante. To the best of my recollection, the payment was made to Bustamante or for the benefit of Bustamante as seller of Adora.

15. During 2024, I paid an additional $50,000 toward the Adora purchase. To the best of my recollection, that $50,000 was paid in installments by check that extended beyond the end of January 2024, after Rycraft told me the funds were needed to continue the purchase. To the best of my recollection, these payments were made to Bustamante or for the benefit of Bustamante as seller of Adora.

16. Between approximately January 2024 and May 2024, at Rycraft's repeated requests, I paid an additional total of approximately $68,000 of my own funds for Adora's operating and payroll expenses. To the best of my recollection, those funds were transferred or paid into accounts identified to me by Rycraft as Adora Vida Care, LLC operating or payroll accounts, after Rycraft told me they were needed to keep the business running while she brought in patients.

17. In total, I paid approximately $168,000 of my own money in connection with Adora. I have not received any of that money back.

18. During this period, I reached an agreement with Bustamante to revise the payment schedule for the remaining balance of the Adora purchase price.

19. Because I continued to advance my own funds to Adora's operating and payroll expenses at Rycraft's repeated requests—funds that, based on Rycraft's representations to me about generating patients and revenue, should not have been needed from me—I had less money available to make further payments to Bustamante on the remaining balance.

20. Before approximately early 2024, I had access to Adora's premises, and I understood I had access to information about Adora's operating and payroll bank accounts.

4

**21.** In approximately early 2024, Rycraft barred me from Adora's physical premises and stopped giving me information about and access to Adora's operating and payroll bank accounts. After that point, I could not enter Adora's premises, could not view the online banking for Adora's accounts, and could not direct any transfers from or payments out of those accounts. To my understanding, the operating and payroll accounts were funded with the monies I advanced.

**22.** When Rycraft cut off my access, she told me, in substance, that she could not be removed from Adora because the licenses were under her name—the same arrangement she had originally told me was necessary to avoid a "conflict of interest."

**23.** Rycraft told me that she would report me to the Labor Board and that she would contact my adult sons and other members of my family who had no involvement in the Adora transaction. I understood those statements as threats intended to keep me from pressing for information or for my money back.

**24.** Paragraph 16 of Rycraft's Declaration states that I used Adora bank account funds to gamble at casinos. I did not use Adora bank account funds to gamble.

**25.** After Rycraft cut off my access to Adora's operating and payroll accounts in approximately early 2024, I could not withdraw funds from, transfer funds out of, or otherwise monitor activity in those accounts. I had no operational control over Adora's accounts during the period after my access was removed.

**26.** Paragraph 20 of Rycraft's Declaration says that the signature on Exhibit 1 (the Purchase Agreement) "looks like" her signature but that she did not sign Exhibit 1. I observed Rycraft sign the Benefactor Acknowledgment (Exhibit 2) at our December 22, 2023 meeting. I do not have personal knowledge of every signing of Exhibit 1. The authenticity of the signatures on Exhibit 1

is disputed, and I understand that the original records and, if necessary, a handwriting examination will be needed to address that issue.

27.    Adora Vida Care, LLC is now in default with the Nevada Secretary of State, as reflected in Exhibit 4 to the Second Amended Complaint.

28.    After I sought to recover my investment and to reassert my rights in Adora, Rycraft sued me as a third-party defendant in the Clark County District Court case Bustamante had filed against Rycraft, Case No. A-24-89488-C.

29.    No discovery has occurred in this adversary proceeding. To my knowledge, no depositions have been taken and no document discovery has been completed.

30.    Key evidence necessary to oppose any summary judgment is in Rycraft's possession or in the possession of third parties. That evidence includes, among other things: (a) Adora's bank records (account-opening documents, signature cards, authorized users, monthly statements, and transaction detail); (b) records from Bustamante regarding payments received and the drafting and execution of the documents at issue; (c) communications between Rycraft and me, and between Rycraft and others, concerning the funding, control, and use of Adora's funds and my removal from access; (d) records relating to the alleged casino activity; and (e) records relating to Rycraft's residences.

31.    I respectfully request the opportunity to obtain that discovery before the Court considers entering summary judgment. Until I have had that opportunity, I am unable to present every fact material to my opposition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 29 2026,

*/s/Joan Lee*
**JOAN LEE**